


IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

**Randy Lee Luck,**
**Plaintiff,**

v. **1:09cv335 (AJT/JFA)**

**Danny Fox, et al.,**
**Defendants.**

MEMORANDUM OPINION

Randy Lee Luck, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment right to reasonable medical care was violated by defendants, who plaintiff claims improperly treated him for an infection. After reviewing plaintiff's complaint, the claim against defendants must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[1]

**I. Background**

Plaintiff, a former inmate at the Mecklenburg County Jail in Boydton, Virginia, alleges that on Friday, June 27, 2008, he caught a "staph infection" while being housed at the jail. Compl. 5.

[1] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

According to plaintiff, from that Friday to the following Monday, June 30, 2008, he experienced difficulty sleeping as a result of the pain and repeatedly asked correctional officers to take him to the hospital. Compl. 5. Plaintiff asserts that this allegation "is supported by" his wife's "request to staff" when she visited plaintiff on June 28. Compl. 5. On June 30, plaintiff alleges that he called his wife and asked her to contact defendant Sheriff Danny Fox and request that plaintiff be taken to a local hospital, because the infection had grown into a "soft ball size" wound that was causing him pain. Compl. 6. Plaintiff's wife spoke to Sheriff Fox, who then asked defendant Roosevelt Terry, Chief of the jail, and the jail's nurse to check in on plaintiff. Plaintiff claims that he again requested "immediate hospitalization and care," but instead was placed on "non-effective antibiotics and refused a doctor's care." Compl. 6.

For three more days, until July 3, 2008, plaintiff claims that he endured pain and suffering, because the "core" of the infection now had become the size of "1/2 of a softball" and had "burst inside itself." Compl. 6. According to plaintiff, he was finally examined by the jail's "contracted doctor" on July 3, and the doctor informed plaintiff that he would need to cut out "the core" of the infection. Compl. 6. The doctor made an incision, "squeezed out the infection with both hands, filled [the] hole with gauze," and secured the gauze with tape. Compl. 6-7. However, plaintiff claims that in order to undergo this procedure, he was instructed to lean over a "dirty, unsanitized chair," and that the scalpel used by the doctor was "lying on a table where no alcohol was available to clean [plaintiff's] wounds" or the scalpel itself. Compl. 7.

Following the procedure, the doctor told plaintiff to clean the area, to have his bandage changed daily, and to continue his antibiotics. Compl. 7. Plaintiff alleges that the infection continued to drain and that the medical staff failed to change his bandages in a timely fashion.

Compl. 7. On July 11, eight days after his initial appointment, plaintiff again saw the doctor, who had to squeeze more "drainage" from the wound, but did so without any anesthesia or "numbing solutions," which caused plaintiff to "partially faint and go limp due to pain." Compl. 7. Plaintiff also alleges that between July 11 and July 13, the nurse forgot to re-order plaintiff's antibiotics. Compl. 7. On July 17, plaintiff again saw the doctor, who "ordered that plaintiff remain on antibiotics, and provided no quality professional care nor compassion whatsoever." Compl. 8.

Plaintiff also attaches to his complaint what he refers to as the "affidavit and preserved right to testify" of his wife, Janet Kime Luck, to support his claims. However, the facts of this affidavit differ in many respects from plaintiff's statement of the facts in his complaint. According to plaintiff's wife, plaintiff found one sore on his back and another on his leg. Attach. to Compl. 1. He asked a correctional officer to look at the sores, and then requested to see a doctor, however, he was informed that the doctor would not be available for at least a week. Attach. to Compl. 1. Plaintiff then was informed by an inmate that the sore "looked like a staph infection, as [the inmate] had seen it before." Attach. to Compl. 1. On Saturday June 28, plaintiff's wife visited plaintiff in jail, where plaintiff told her that officials had refused him a doctor until July 3. Attach. to Compl. 1. As she was leaving the jail, plaintiff's wife asked two deputies if plaintiff could see a doctor that day if his wife paid for the visit. Attach. to Compl. 1. The deputies informed plaintiff's wife that the doctor was not visiting the jail until July 3, and that there was nothing they could do until then. Attach. to Compl. 1.

That same day, Saturday June 28, plaintiff's wife called Sheriff Fox, who was not available. Attach. to Compl. 1. Plaintiff's wife called again on Monday, June 30, and informed the Sheriff that plaintiff may have a staph infection and needed medical attention. Attach. to Compl. 1. Sheriff Fox

called plaintiff's wife back three hours later, and told her that he had spoken to the chief of the jail, that antibiotics were ordered and started that same day, and that the doctor would be able to see plaintiff when he came to the jail on July 3. Attach. to Compl. 1. According to plaintiff's wife, she and plaintiff "believe that the chief knew what the sore was, as he was able to give the medical information to obtain medication, yet failed to get immediate direct medical attention from the doctor." Attach. to Compl. 1. Plaintiff's wife claims that "if a physician had seen [the infection] sooner then the scarring and lancing may have been prevented, along with the increased pain." Attach. to Compl. 1.

Plaintiff's wife relates that plaintiff confirmed that he received antibiotics on June 30, but that when he saw the doctor on July 3, he was given "inadequate pain medication." Attach. to Compl. 1. She adds that plaintiff was "nervous about the fact that the medical equipment used didn't appear to be sterilized adequately." Attach. to Compl. 1. In order to remedy plaintiff's infection, the doctor had to lance the skin because the sore had developed a "core" under the skin and had ruptured. Attach to Compl. 1. After the procedure was over, plaintiff's wife states that plaintiff was told to keep his bandages as dry as possible and to change them once a day, however, this was not done even though plaintiff "asked for help," because other inmates were told they were not allowed to assist plaintiff in the care of his sores and plaintiff could not reach the sores on his own. Attach. to Compl. 2. She also states that it was impossible to keep the bandages dry because of the high temperatures and a lack of fans or air conditioning in the jail. Attach. to Compl. 1-2. According to plaintiff's wife, these factors caused "more complications," though she does not indicate what complications arose. Attach. to Compl. 2.

Plaintiff has named as defendants Sheriff Danny Fox, custodian of the Mecklenburg County Jail; Roosevelt Terry, chief of the jail, and the unnamed doctor who was contracted by the jail to serve its inmates and who treated plaintiff for his infection. Plaintiff seeks $25,000 in damages, and any injunctive relief that the Court deems appropriate.

**II. Standard of Review**

Pursuant to 28 U.S.C. § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and construed in plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, although the complaint "does not need detailed factual allegations," the facts alleged must be sufficient to raise plaintiff's claim above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see id. at 570 (determining that where a complaint did not allege facts sufficient to nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed). Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

**III. Merits**

It appears from plaintiff's complaint that he seeks to allege a claim of denial of his right to reasonable medical care in violation of the Eighth Amendment. To support a claim of a denial of reasonable medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Thus, plaintiff must first demonstrate a sufficiently serious medical need. See, e.g., Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious); Murphy v. Walker, 51 F.3d 714, 720 (7th Cir. 1995) (holding that a broken hand is a serious injury, and that permanent harm could result without proper evaluation and treatment). A serious medical need is one that poses a substantial risk of serious injury to an inmate's health and safety. Young v. City of Mt. Ranier, 238 F.3d 567, 576 (4th Cir. 2001).

Second, a plaintiff must show deliberate indifference to that serious medical need, which may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. Treatment by a health care provider constitutes deliberate indifference only where it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. See Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier, 896 F.2d at 851. A defendant must act with either actual intent or reckless disregard, meaning that the defendant disregarded "a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier,

896 F.2d at 851-52. Additionally, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

Here, taking all of his allegations as true, plaintiff has failed to state a claim of denial of his Eighth Amendment right to reasonable medical care. First, plaintiff has failed to demonstrate that he had a sufficiently serious medical need. Although plaintiff claims he was in pain and had trouble sleeping, there is no indication that plaintiff ever sought pain medication in order to alleviate his symptoms. Furthermore, plaintiff has alleged no facts to support that the two sores posed any "substantial risk of serious injury" to his health and safety. Young, 238 F.3d at 576. Unlike a situation involving something as severe as an untreated broken bone, plaintiff had only an infection which had manifested itself in two sores on plaintiff's body and which, following treatment, resulted in no long-term or permanent damage to plaintiff.

Moreover, even assuming plaintiff's infection rose to the level of a serious medical need, plaintiff has not alleged facts to demonstrate that any defendant was deliberately indifferent to those needs. First, plaintiff names Sheriff Fox and Chief Terry as defendants. Typically, a sheriff, warden, or chief of a jail is not liable under § 1983 simply because he supervises individuals who may have violated plaintiff's rights. However, as alleged here, where a supervisor had personal knowledge of and involvement in the alleged violations, an action may properly proceed against him. Nonetheless, plaintiff states in his complaint, and plaintiff's wife reiterates in her affidavit, that she informed Sheriff Fox of her husband's sores on June 30, and requested that Sheriff Fox take some action to address plaintiff's needs. Sheriff Fox contacted defendant Chief Terry and a nurse at the jail the

same day, and within three hours plaintiff was provided with antibiotics to treat his infection, which he was given until he could see the doctor on July 3 for further evaluation and treatment. Thus, far from demonstrating deliberate indifference, plaintiff's complaint and the affidavit make clear that Fox and Terry both took immediate action to ensure that plaintiff was being treated properly.[2] Ultimately, plaintiff has failed to state a claim against Sheriff Fox and Chief Terry, and this claim must be dismissed pursuant to § 1915A.

Plaintiff also names the "unknown" doctor who treated his infection as a defendant in this action. However, plaintiff also has failed to show that the doctor was deliberately indifferent to plaintiff's medical needs. Plaintiff's claim against the doctor primarily centers around allegations that the doctor performed the incision on an "unsanitized" chair, that the scalpel did not "appear" to be sterilized, and that he was not given any anesthesia for the procedure. Although plaintiff questions the sanitary conditions of the office and the instruments used by the doctor, there is nothing to support plaintiff's conclusory allegations. There is no indication anywhere in plaintiff's complaint or his wife's affidavit that the scalpel was not sterilized prior to plaintiff's visit, or that the chair he was sitting on while the doctor made the incision was unsanitary. See Hoffman v. Tuten, 446 F. Supp. 2d 455, 461 (D.S.C. 2006) (finding that plaintiff's allegation that the needle used to draw his blood was dirty did not amount to deliberate indifference, as plaintiff could only state that the needle was unpackaged when he entered the room, and had presented no evidence that

---

[2] Although plaintiff's wife notes that she called Sheriff Fox on June 28 and was told that he would not be available until June 30, this does not amount to deliberate indifference. Plaintiff's wife called and wished to speak to the sheriff on June 28, a Saturday, and was told that the sheriff was not available at that time. Because plaintiff's wife wanted to talk to the sheriff "directly," she was told that she could contact him on June 30, the following Monday. Such a delay is reasonable, given that plaintiff's wife sought to contact the sheriff over the weekend, but the sheriff was not available until that Monday during normal, weekday business hours.

the needle was previously used or unsanitary in any way). Additionally, even assuming plaintiff's assumptions were correct, there is nothing to indicate that he experienced any negative consequences as a result of the doctor's action, and at worst such allegations rise only to the level of negligence by the doctor.

Furthermore, although plaintiff states that he was not given anesthesia prior to the incision, this allegation amounts to nothing more than a disagreement over the course of his treatment, which is insufficient to state an Eighth Amendment claim. Wright, 766 F.2d at 849. Plaintiff does not allege that the doctor intentionally or maliciously withheld anesthesia or some other numbing agent knowing that doing so would cause plaintiff additional pain. While the incision and drainage procedure itself may have been painful, such pain is not attributable to any deliberate indifference by the doctor, but rather is reasonable given the fact that plaintiff's infection required lancing.

As well, plaintiff alleges that the doctor did not provide plaintiff with "adequate treatment" and also that he provided "no quality professional care." However, such broad and bare allegations will not suffice. "The presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint cannot support a finding of deliberate indifference." Young, 238 F.3d at 577. Here, the doctor saw plaintiff on three separate occasions, each time attempting to relieve plaintiff of the infection by draining the sore, bandaging plaintiff following the procedure, and ordering antibiotics for plaintiff.[3] The doctor consistently addressed plaintiff's medical needs, and his actions cannot be said to be "so grossly incompetent, inadequate,

[3] Plaintiff also alleges that an unnamed nurse forgot to order plaintiff's antibiotics between July 11 and July 13. Although she is not named as a defendant, even if she had been, plaintiff's allegations would not state a claim against her. The nurse's failure to reorder the medicine because she forgot is at worst simple negligence, not "gross" negligence as plaintiff alleges, and does not rise to the level of a constitutional violation.

or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. Thus, plaintiff has failed to state a claim pursuant to § 1915A against the doctor for a violation of plaintiff's Eighth Amendment right to reasonable medical care, and this claim must be dismissed.

Finally, although plaintiff states that he made requests to be taken to the hospital numerous times to various jail officials, and that he received no assistance from jail staff in changing his bandages once he was treated, plaintiff fails to name any such jail officials as defendants in this action. Even if he had, however, plaintiff also would fail to state an Eighth Amendment claim against those individuals. While plaintiff himself states that jail staff told him he had a staph infection, the attached affidavit from plaintiff's wife states that an inmate informed plaintiff that it "looked like" a staph infection, but does not indicate that any jail staff ever knew or believed that it was. Moreover, although plaintiff indicates that he had anywhere from a golf ball- to softball-sized lump on his back, plaintiff's wife's affidavit contradicts plaintiff's complaint, stating that when she visited plaintiff and he had only a "sore" on his back and leg. As noted, where such contradictions exist between the complaint and the attached exhibit, the exhibit prevails. Thus, even if jail officials knew of these sores, such a condition is not one which jail officials would have known or believed was "a substantial risk of danger" to plaintiff's health or safety.[4] Miltier, 896 F.2d at 851-52. Without "[a]ctual knowledge or awareness on the part of the alleged inflicter," which is "essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot

---

[4] The Court notes that although plaintiff alleged that he could not sleep for the three days between when he received the antibiotics on June 30 and when he saw the doctor on July 3, he does not state that he actually informed prison officials of this fact. Again, without knowledge of plaintiff's condition, jail officials cannot be deliberately indifferent to that condition.

be said to have inflicted punishment,'" plaintiff is unable to state a claim. Brice v. Va. Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994).

Moreover, although both the complaint and the affidavit indicate that plaintiff eventually did develop some mass that needed to be drained when he saw the doctor, he was already being given antibiotics to treat whatever infection he had by June 30, just a few days after he noticed the presence of the sores, and plaintiff was scheduled to see the doctor on July 3. Thus, even if jail officials eventually acquired actual knowledge or awareness regarding the existence of plaintiff's sores or later mass, there is nothing to indicate that a need existed for additional medical treatment once plaintiff was placed on antibiotics and scheduled to see the doctor three days later. Lastly, jail officials' failure to assist plaintiff in changing plaintiff's bandages is, as are many other actions alleged in plaintiff's complaint, at worst an example of negligence. Although plaintiff's wife alleges in her affidavit that plaintiff experienced "complications" due to this inaction by jail officials, there is no indication in either the complaint or affidavit of what these complications were, or how they impacted plaintiff. As a result, even if plaintiff had named such officials as defendants in his complaint, he would have failed to state a claim against these individuals pursuant to § 1915A.[5]

---

[5] As a final matter, plaintiff has asked the Court to permit a non-attorney to serve as plaintiff's representative in this case, citing to 28 C.F.R. § 68.33(3)(i) in support of his request. However, the cited provision permits an individual who is not an attorney or a law student to provide representation for a party only in an administrative hearing before an administrative law judge in cases involving allegations of unlawful employment of aliens, unfair immigration-related employment practices, and document fraud. Plaintiff is not entitled to have an individual unlicensed and untrained in the practice of law represent him in this matter before this Court. See Local Civil Rule 83.1.

## IV. Conclusion

For the reasons stated above, plaintiff has failed to state a claim against any of the named defendants. Therefore, this complaint will be dismissed pursuant to § 1915A for failure to state a claim. An appropriate Order shall issue.

Entered this 28th day of April 2009.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia